UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| KATHERINE S. DE LOS SANTOS, as *Administratrix of the* Estate of PETER DE LOS SANTOS; PAOLA L. OCHOA, as *Parent and Guardian of PD and PD, Minors*; and MAYRA E. FERRARAS, *Individually*,<br>    Plaintiffs,<br><br>v.<br><br>WAYNE T. SALISBURY, JR.; CAROLE DWYER; RUI DINIZ; BARRY WEINER; THE STATE OF RHODE ISLAND; JOHN DOE nos. 1-5, alias; and JANE DOE nos. 1-5, alias,<br>    Defendants. | C.A. No. 24-266-JJM-LDA |

ORDER

Peter De Los Santos committed suicide by hanging while a pretrial detainee in the care of the Rhode Island Department of Corrections ("RIDOC"). His Estate and family ("Estate") bring this five-count Amended Complaint: Counts I and II are federal claims under 42 U.S.C. § 1983 for violations of Mr. De Los Santos' Eighth and Fourteenth Amendment rights, alleging deliberate indifference against all Defendants[1] and supervisory liability against Defendants Wayne T. Salisbury, Jr., Carole Dwyer, Rui Diniz, and Barry Weiner ("Supervisory Defendants"); Count III is a state-law negligence claim against all Defendants; Count IV is for negligent

---

[1] Due to Defendants' discovery delays, the Estate does not know the identities of RIDOC Officers who encountered Mr. De Los Santos in the two days he was at the ACI.

supervision and training against only the Supervisory Defendants; and Count V is a respondeat superior claim against the State of Rhode Island.  ECF No. 4.

The Supervisory Defendants move to dismiss asserting that the Estate has not plead sufficient facts to show a constitutional violation or intent; that the Defendants are entitled to qualified immunity; and that the Court should decline supplemental jurisdiction over the state-law claims, which they allege are insufficiently plead.  ECF No. 28.

## *Facts Alleged*

Pawtucket Police arrested Peter De Los Santos, 35 years old, on a charge of misdemeanor domestic violence.  Later that day while in the police station cell block, Mr. De Los Santos said that he swallowed a small bag of fentanyl prior to being arrested.  He was transported to the hospital where abdominal X-rays showed no fentanyl bag.  Mr. De Los Santos was discharged and sent back to the police station.  The next day, a police sergeant saw Mr. De Los Santos in his cell wrapping strips he had ripped from his shirt around his neck.  Police intervened and took his clothes and provided him a Tyvek suit, which is made of durable material that cannot be ripped into strips for use as a ligature.

Later that day, the police transported Mr. De Los Santos to the Intake Service Center at the Adult Correctional Institutions ("ACI").  He was wearing the suicide-prevention Tyvek suit when he arrived at the ACI and the Pawtucket Police reported to RIDOC staff that Mr. De Los Santos had earlier that day been observed wrapping strips from his shirt around his neck, and that the day before he reported swallowing

a bag of fentanyl.[2] While suffering withdrawal symptoms from substance use disorder, Mr. De Los Santos made known to Defendants that he intended to commit suicide. Despite this information, RIDOC staff provided Mr. De Los Santos with underwear, socks, and two T-shirts, and staff either provided Mr. De Los Santos with shoelaces or did not remove his shoelaces. RIDOC staff also did not keep constant visual supervision of him in violation of standard operating policy and took no action to abate the known risk that Mr. De Los Santos would commit suicide.

Two days after arriving in RIDOC care, while alone and unwatched in his cell, Mr. De Los Santos wrapped his shoelaces around his neck, affixed the laces to something in his cell, and hung himself. RIDOC staff called rescue who found Mr. De Los Santos pulseless, and found his body cool to the touch. RIDOC staff reported to Emergency Medical Services ("EMS") that Mr. De Los Santos was last seen alive about an hour earlier. Despite cardio-pulmonary resuscitation, the EMS found no signs of life throughout treatment and transported Mr. De Los Santos's body to Rhode Island Hospital where he was pronounced dead.

## Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To decide plausibility, the Court must first review the complaint and separate conclusory legal

---

[2] Mr. De Los Santos had a history of substance use disorders, which was known to the RIDOC from his history of incarceration.

3

allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). When reviewing the complaint, the court must draw all inferences in favor of the plaintiffs. *Abdallah v. Bain Cap. LLC*, 752 F.3d 114, 117 (1st Cir. 2014).

Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* To state a plausible claim, a complaint need not detail factual allegations but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

## *Legal Analysis*

### I. Qualified Immunity

As it is a threshold issue, the Court will first discuss the Supervisory Defendants' qualified immunity defense.

It has been clearly established since at least 1986, "that police officers violate the Fourteenth Amendment due process rights of a detainee if they display a 'deliberate indifference' to the unusually strong risk that a detainee will commit suicide." *Bowen v. City of Manchester*, 966 F.2d 13, 16 (1st Cir. 1992) (citing cases). And supervisory liability may attach under § 1983 for failure to train police or correctional officers on the prevention of detainee suicides. *See Manarite v. City of Springfield*, 957 F.2d 953, 956-57 (1st Cir. 1992).

Taking the allegations in the First Amended Complaint as true, Defendants failed to act in the face of Mr. De Los Santos's known risk of imminent suicide. He presented to RIDOC as an unusually strong suicide risk; he was wearing a suicide prevention Tyvek suit, Pawtucket Police told RIDOC that he threatened suicide, and Mr. De Los Santos himself told Defendants that he was contemplating suicide. Defendants did not follow their own protocol and instead ignored these signs, putting Mr. De Los Santos at risk. The Supervisory Defendants did not train the COs on RIDOC's suicide prevention policy, did not implement the policy, and did not hold COs responsible or accountable for violating the policy. On this record, qualified immunity does not apply. *See Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) ("It is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage.").

5

## II.  Pleading Sufficiency

A review of the facts alleged in the Amended Complaint shows that the Estate has plausibly alleged sufficient facts to establish each of their causes of action, including objective and subjective deliberate indifference under the Eighth Amendment.  Under the Eighth Amendment, prisoners cannot be treated with "deliberate indifference" toward "a substantial risk of serious harm to health" or "serious medical needs." *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011); *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976)).  "Because prison suicides are analogous to the failure to provide medical care, we agree that 'deliberate indifference' is the appropriate 'barometer' by which suicide cases involving convicted prisoners should be tested." *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991) (citing *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir.1990)).

The Estate has alleged that the RIDOC and its agents knew that Mr. De Los Santos had a history of substance abuse, he swallowed a bag of fentanyl, was wearing a suicide-prevention jumper when he arrived at the ACI, he had attempted suicide while in the custody of Pawtucket Police, and he told RIDOC agents that he had suicidal ideations.  The Estate has alleged that, despite the Defendants' actual notice that Mr. de Los Santos was suicidal and likely to harm himself, they did not take necessary precautions to keep him safe and RIDOC agents had not checked on him for over an hour.  These allegations of actual knowledge and lack of action are sufficient to plead deliberate indifference.

As to the Supervising Defendants specifically, the Estate plausibly claims that the Supervisory Defendants failed to train the John Doe correctional officers ("COs") Defendants on the RIDOC's suicide-prevention policy, failed to implement the policy, and failed to hold COs responsible or accountable for violating the policy. *See Manarite*, 957 F.2d 956-57. The Estate has plausibly alleged that a "seriously elevated risk of suicide, [the supervisor's] knowledge of that risk, and [the supervisor's] failure to take obvious remedial steps, to the point where [their] culpability considerably exceeds negligence and, because it is 'reckless' or 'callous' or wanton." *Id.* at 957.

Because the federal claims survive Defendants' motion, the Court exercises supplemental jurisdiction over the state-law claims. As they are based on the Estate's § 1983 claims, the Court finds that each of these claims has been plausibly plead. The Court DENIES the Defendants' Motion to Dismiss. ECF No. 28.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*
_____
John J. McConnell, Jr.
Chief Judge
United States District Court

March 18, 2025